[Cite as *Toledo v. Levesque*, 2021-Ohio-27.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo

Appellee

v.

Victor Levesque, Jr.

Appellant

Court of Appeals Nos. L-20-1028
L-20-1029

Trial Court Nos. CRB-19-01746
CRB-19-06669

**DECISION AND JUDGMENT**

Decided: January 8, 2021

* * * * *

Laurel A. Kendall, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} In this consolidated appeal, appellant, Victor Levesque, Jr. appeals the

August 21, 2019 judgment of the Toledo Municipal Court finding him guilty of a

violation of R.C. 2903.21(A), aggravated menacing, and of R.C. 2917.21(B), telephone

harassment, in case No. CRB-19-06669 as well as finding him in violation of the terms of

his probation in case No. CRB-19-01746. Appellant was sentenced to serve 180 days on

each charge, which days were suspended upon certain terms of probation. However, in case No. CRB-19-01746, he was sentenced to serve 90 days for violating the terms of his probation.

{¶ 2} Appellant presents a single assignment of error:

The court's guilty verdict was not supported by sufficient evidence, and/or was against the manifest weight of the evidence.

{¶ 3} The appellee, city of Toledo, has not filed any responsive brief.

{¶ 4} The facts establish that appellant and the victim in these cases had been married for three years, but had been separated since November 2019. The victim indicated that she was threatened by way of a telephone call on May 24, 2019. At trial she testified that when appellant called, he would typically employ an application (app) that would enable him to conceal the actual phone number of the caller.

{¶ 5} The victim testified that, over the course of her four-year relationship with appellant, that she could recognize his voice on the telephone. She testified that on May 24, 2019, she received a telephone call from an anonymous number. When she answered the phone and the caller began to speak, she recognized that the caller was appellant, Victor Levesque, Jr. He said that she "would find him in her bed with a 9mm." and "if you want to die that's on you, not me." She further testified that she feared for her life.

2.

{¶ 6} Several voice audio recordings were introduced and played for the trial court evidencing the voice on the calls. Defense counsel did cross-examine the victim concerning the poor audio quality.

{¶ 7} Ultimately, appellant testified and denied that any of the recordings were of his voice and further denied having made any threatening statements to the victim.

{¶ 8} Appellant argues that due to the poor quality of the audio recordings presented at trial, in addition to the testimony from the victim that various "apps" were used to disguise the identity and origin of the caller, the prosecution was unable to satisfy its sufficiency burden.

{¶ 9} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). We examine the evidence in the light most favorable to the state and decide whether any rational trier of fact could have found that the state proved, beyond a reasonable doubt, all of the essential elements of the crime. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 78.

{¶ 10} In determining whether a conviction is based on sufficient evidence, an appellate court does not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. We will not disturb the verdict unless we determine that reasonable minds could not arrive at the

3.

conclusion reached by the trier of fact. *State v. Toda*, 6th Dist. Lucas No. L-18-1149, 2019-Ohio-4903, ¶ 31-41.

{¶ 11} Appellant was convicted of violating R.C. 2903.21(A), aggravated menacing, which states, in part, that "no person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of such other person."

{¶ 12} He was also convicted of violating R.C. 2917.21(B), which provides that "no person shall make or cause to be made a telephone call, or permit a telephone call to be made from a telephone under his control, with purpose to abuse, threaten, annoy, or harass another person."

{¶ 13} Appellant's arguments with respect to the sufficiency and weight of the evidence are the same. Appellant contends the state failed to prove beyond a reasonable doubt that the caller on the recordings was, in fact, appellant. As a basis for this assertion, appellant points to the poor audio quality of the recording and the fact that the victim testified that the origin of the calls were from an anonymous telephone number. In support, appellant cites to *Vera v. Yellowrobe*, 10th Dist. Franklin App. No. 05AP-1081, 2006-Ohio-3911. In that case, the court upheld, among other things, the dismissal of a civil protection order. At trial, a recording of a telephone conversation was introduced. The trial court noted:

> So that I can't really rely upon the tape. The fact that I don't know and I can't recognize the voice. And I was-I don't have a date on it, so I

4.

can't even determine if that is a tape that was made at a point that would be critically important in terms of determining if, indeed, there was a threat made. There's no date. So that's not something helpful to the Court. And, also, I wasn't able to determine, as I said, I'm not an expert in determining whether or not a voice is the voice it purports to be. I couldn't say with certainty after hearing [appellee] testify that it was her voice. I'm not saying whether it is or isn't. I don't know. And it's simply not something that I put a lot of stock in, simply because it doesn't even have a date, so I don't know.

*Id*. at ¶ 35.

{¶ 14} Thus, in that case, the trial court expressed specific concerns about when the tape had been made, which factored into its determination of credibility, not necessarily the audio quality of the tape.

{¶ 15} In *Yellowrobe*, the court upheld the judgment of the trial court when it held:

Thus, even if the alleged events had been more recent, the evidence would not have been enough to establish a threat of domestic violence because the trial court rejected appellant's evidence as non-credible. Having observed the witnesses personally and heard their testimony firsthand, the trial court was in the best position to judge their credibility. *Kabeer*. Here, in particular, where the parties presented starkly

different testimony, we will not second-guess the trial court's credibility determinations.

*Id*. at ¶ 51.

{¶ 16} Likewise, in this case, the trial court observed the witnesses personally and heard their testimony firsthand, each subject to cross-examination. The trial court was in the best position to judge their credibility.

{¶ 17} In this case, the trial court stated that it had no difficulty in understanding what was said on a pertinent portion of the audiotape. It stated:

Ms. S testimony is that it is, in fact, Victor Levesque on the tape. Her testimony is that he called her when she was – when he was told not to. Her testimony is that, among other statements, he said, if you want to die, that's on you. Not me. That one I heard – I think that's the one, I heard on the tape. I did not hear the statement about a 9mm.

{¶ 18} The trial court went on to state:

So even though I did not hear it, on the tape, that evidence is clearly, in the record, based on Ms. S' testimony. Mr. Levesque states that it is not him on the recording. But Ms. S testifies that it is him.

{¶ 19} The trial court then concludes that the prosecution has proven its cases beyond a reasonable doubt. Where the parties presented starkly different testimony, we will not second-guess the trial court's credibility determinations. *Id.*

6.

{¶ 20} While sufficiency of the evidence examines whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386.

{¶ 21} In our review for sufficiency, we do not assess whether the state's evidence was believable but whether, if believed, the evidence against the defendant would support a conviction. Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Levesque committed the crimes of telephone harassment and aggravated menacing. We find that the state met its burden regarding each element of each crime, and accordingly, there was sufficient evidence to support appellant's conviction.

{¶ 22} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony." *Wilson* at ¶ 25, quoting *Thompkins* at 387. In determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving any conflicts in the evidence, the jury or trier of fact clearly lost its way and thereby created such a manifest miscarriage of justice that the conviction must be reversed and a new trial must be ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d

7.

717 (1st Dist.1983). A conviction should be reversed on manifest weight grounds only in the most "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175.

{¶ 23} With regard to the manifest weight of the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against conviction.

{¶ 24} We conclude that substantial evidence supports the verdict, and that the trial court did not lose its way and create a manifest miscarriage of justice. We find that the verdict is not against the manifest weight of the evidence.

{¶ 25} Based on the foregoing, appellant's sole assignment of error is found not well-taken and denied. The judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24(A).

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

8.